# In the United States Court of Federal Claims

No. 17-843C
(Filed: April 11, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ACME WORLDWIDE ENTERPRISES, INC., \* \* \*  Plaintiff, \* \* v. \* \* THE UNITED STATES, \* \*  Defendant. \* | RCFC 24; Intervention as a Matter of Right; Legally Protectable Interest; Permissive Intervention; Common Question of Law or Fact; Undue Delay or Prejudice; Scope of Intervenor's Participation |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>John P. Moran</u>, Washington, DC, for plaintiff.

<u>Conrad J. DeWitte, Jr.</u>, United States Department of Justice, Washington, DC, for defendant.

<u>Milton C. Johns</u>, Tysons, VA, for putative defendant-intervenor.

**OPINION AND ORDER**

**SWEENEY**, Judge

In this patent infringement case, plaintiff ACME Worldwide Enterprises, Inc. ("ACME") alleges that the United States Army ("Army") and the United States Air Force ("Air Force") procured multiple training systems that included an M240H weapon recoil system capable of simulating the look and feel of an actual weapon ("M240H weapon recoil simulator"). ACME contends that the M240H weapon recoil simulator infringes upon United States Patent Number 8,690,575 (the "'575 patent"). Currently before the court is a motion filed by Industrial Smoke & Mirrors, Inc. ("ISM") to intervene in this case as a matter of right pursuant to Rule 24(a) of the Rules of the United States Court of Federal Claims ("RCFC") or, alternatively, for permissive intervention pursuant to RCFC 24(b). As explained below, ISM does not meet the standards for intervention as a matter of right because it does not appear to have a legally protectable interest in the subject matter of this action. Nevertheless, ISM should be permitted to intervene. Accordingly, the court denies ISM's motion to intervene as a matter of right and grants ISM's alternative motion for permissive intervention.

## I. BACKGROUND

### A. Factual History

The Army executed contracts with Science Applications International Corporation ("SAIC")—now Leidos, Inc. ("Leidos")—and CymSTAR LLC ("CymSTAR") on January 27, 2010, and April 30, 2014, respectively, that each included a specification for M240H weapon recoil simulators.[1]  SAIC and CymSTAR, in turn, each subcontracted with ISM to manufacture the M240H weapon recoil simulators.  ISM delivered the M240H weapon recoil simulators to SAIC and CymSTAR, which then delivered the simulators to the Army at various locations throughout the United States.  Similarly, the Air Force executed a contract with Sikorsky Aircraft Corporation ("Sikorsky") on June 26, 2014, that included a specification for M240H weapon recoil simulators.  As part of that effort, Sikorsky subcontracted with FlightSafety International Simulation Systems ("FlightSafety").  FlightSafety, in turn, subcontracted with ISM to manufacture the M240H weapon recoil simulators.  The simulators have not yet been delivered to the Air Force.

All of the prime contracts incorporated Federal Acquisition Regulation ("FAR") 52.227-1 by reference.  The SAIC and Sikorsky contracts also incorporated FAR 52.244-6 by reference.  Further, the Sikorsky contract incorporated FAR 52.227-3 by reference with respect to "[c]ommercial items" delivered to the Air Force.  In turn, Sikorsky's subcontract with FlightSafety also incorporated FAR 52.227-1, FAR 52.227-3 with respect to "[c]ommercial items" delivered to the Air Force, and FAR 52.244-6.  FlightSafety's lower-tier subcontract with ISM contained FAR 52.227-1, FAR 52.244-6, and a generic, non-FAR patent infringement indemnity clause.

### B. ACME Pursues Litigation Against ISM

On November 17, 2014, ACME filed a patent infringement suit against ISM in the United States District Court for the District of New Mexico ("New Mexico district court").[2]  On March 30, 2015, the suit was dismissed for lack of personal jurisdiction after ACME conceded the issue.  See ACME Worldwide Enters., Inc. v. Indus. Smoke & Mirrors, Inc., No. CV 14-01041, 2015 WL 11181341, at *1 (D.N.M. Mar. 30, 2015) (unreported order dismissing case).  In dismissing the case, the New Mexico district court also denied ACME's request to transfer the case to the United States District Court for the Middle District of Florida ("Florida district court").[3]  Id. at *1-2.

---

[1] The facts discussed in this opinion—which are undisputed—are derived from the complaint, the parties' submissions, and the exhibits attached to the same, as well as matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

[2] ACME is a New Mexico corporation.  Its principal place of business is located in Albuquerque, New Mexico.

[3] ISM is a Florida corporation.  Its principal place of business is located in Orlando, Florida.

On April 21, 2015, ACME filed a patent infringement suit against ISM in the Florida district court. ISM then asserted 28 U.S.C. § 1498(a) as an affirmative defense and moved for summary judgment. In its motion for summary judgment, ISM explained that the issue was "not whether ISM infringed upon any patent that ACME may have (which ISM denies), but whether ISM is immune from liability pursuant to 28 U.S.C. § 1498(a)." Pl.'s Opp'n to ISM's Mot. Intervene ("ACME Opp'n") Ex. A at 13.[4] ISM contended that ACME's sole remedy was against the federal government in the United States Court of Federal Claims ("Court of Federal Claims") because the accused product was manufactured exclusively for the use and benefit of the federal government according to the federal government's specifications. Id. at 19. ACME consented to ISM's motion for summary judgment, which the Florida district court granted on January 4, 2016. See generally ACME Worldwide Enters., Inc. v. Indus. Smoke & Mirrors, Inc., No. 6:15-cv-00637, slip op. (M.D. Fla. Jan. 4, 2016).

### C. Procedural History

Plaintiff filed its complaint in the instant case on June 21, 2017. After two unopposed requests from defendant for an extension of the due date, defendant timely filed its answer on November 3, 2017. The same day, defendant filed an unopposed motion to notify potentially interested parties Leidos, CymSTAR, and Sikorsky of the present action. The court granted defendant's unopposed motion on November 6, 2017, and stated that, upon service, each prime contractor would be "permitted to appear in this action pursuant to RCFC 14(c) without having to file an RCFC 24 motion to intervene." Order 2, Nov. 6, 2017. Notices were provided that same day. None of the prime contractors appeared in this action by filing a third-party pleading by the deadline for doing so.

On December 21, 2017—before the deadline for any of the prime contractors to appear by filing a third-party pleading—ISM filed the instant motion to intervene pursuant to RCFC 24. ISM states that it is the manufacturer of the accused product and that ISM may be required to indemnify each prime contractor against liability for patent infringement due to ISM's sale or use of the M240H weapon recoil simulator. ISM seeks intervention as a matter of right under RCFC 24(a)(2) or, alternatively, permissive intervention under RCFC 24(b)(1)(B).[5] Defendant does not oppose ISM's motion. However, ACME opposes ISM's motion. On December 28, 2017, the court vacated the deadline for the parties to file a Joint Preliminary Status Report ("JPSR") "pending resolution of ISM's motion to intervene." Order, Dec. 28, 2017. The court then allowed ACME to file a sur-response and ISM to file a sur-reply with respect to ISM's motion to intervene. The motion is now fully briefed, and the court deems oral argument unnecessary.

---

[4] Exhibit A of ACME's opposition to ISM's motion to intervene is a complete copy of ISM's motion for summary judgment in the Florida suit.

[5] ISM invokes RCFC 24(b)(2) on the second page of its motion to intervene, but subpart 2 of RCFC 24(b) is not used in the RCFC. However, ISM properly refers to RCFC 24(b)(1)(B) on the ninth and tenth pages of its motion.

## II.  INTERVENTION AS A MATTER OF RIGHT

RCFC 24(a)(2) provides for intervention as a matter of right for any party that

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The United States Court of Appeals for the Federal Circuit has articulated a four-part test for intervention as a matter of right under RCFC 24(a)(2):

> First, the motion must be timely.  Second, the movant must claim some interest in the property affected by the case.  This interest must be "legally protectable"—merely economic interest will not suffice.  Third, that interest's relationship to the litigation must be "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  Fourth, . . . the movant must demonstrate that said interest is not adequately addressed by the government's participation.

Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (citations omitted).  These requirements are to be "construed in favor of intervention."[6]  Id.  A failure to establish even one element of this test is fatal to an RCFC 24(a)(2) motion.  See id.

### A.  Timeliness

The first requirement for intervention as a matter of right is that the putative intervenor must "timely" file its motion to intervene.  Id.  Determining whether a motion for intervention is timely is a discretionary matter for the trial court based on a totality of the circumstances.  NAACP v. New York, 413 U.S. 345, 366 (1973).  The timeliness requirement "is meant to protect the rights of the existing parties to an action."  6 James Wm. Moore, Moore's Federal Practice § 24.21[1] (2012).

> In conducting a timeliness inquiry, there are no ironclad rules about just how celeritously, in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge.  The passage of time is measured in

---

[6] Intervention as a matter of right is also available, on a timely motion, to a putative intervenor that is "given an unconditional right to intervene by a federal statute."  RCFC 24(a)(1).  ISM does not assert such a right, nor is the court aware of any as applied to ISM.

> relative, not absolute, terms. Thus, what may constitute reasonably
> prompt action in one situation may be unreasonably dilatory in
> another. In the last analysis, the timeliness inquiry centers on how
> diligently the putative intervenor has acted once he has received
> actual or constructive notice of the impending threat.

R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 8 (1st Cir. 2009) (citation omitted). Courts may consider the following factors in deciding whether a motion to intervene is timely:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his rights,
>
> (2) whether the prejudice to the rights of the existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention, and
>
> (3) the existence of unusual circumstances militating either for or against a determination that the application is timely.

Fairholme Funds, Inc. v. United States, 681 F. App'x 945, 949 (Fed. Cir. 2017) (unpublished decision) (internal quotation marks and alterations omitted).

The parties do not dispute that ISM's motion is timely. ISM emphasizes that its motion was filed within six months of ACME's complaint and before (1) the deadline for any of the prime contractors to intervene, (2) any dispositive motions were filed, (3) the deadline for filing the JPSR, and (4) the beginning of formal discovery. See supra Section I.C (discussing the procedural history of this case). ISM also posits that "there is no claim of prejudice to the parties, nor are there any unusual circumstances in this matter that would mitigate against intervention." ISM Mot. to Intervene ("ISM Mot.") 4. Further, ISM observes that, if it is allowed to intervene, it has already filed its RCFC 14(c) pleading. See generally ISM Mot. Ex. 2. Meanwhile, although ACME avers that "ISM has failed at steps two, three, and four," it does not contest the timeliness of ISM's motion. ACME Opp'n 2. Because ISM's motion to intervene was filed in the nascent stages of this case and there are no allegations of prejudice or other circumstances that would weigh in favor of denying intervention, the court agrees with the parties that ISM's motion to intervene is timely.

### B. Legally Protectable Interest

The second requirement for intervention as a matter of right is that the putative intervenor must claim a legally protectable interest in the property that is the subject matter of the case. Wolfsen, 695 F.3d at 1315. A legally protectable interest is "one which the substantive law recognizes as belonging to or being owned by the [putative intervenor]," and is "more than merely an economic interest." Am. Mar. Transp., Inc. v. United States, 870 F.2d 1559, 1562 (Fed. Cir. 1989) (emphasis and internal quotation marks omitted). While "many of the cases in

which a sufficient 'interest' has been found under [RCFC] 24(a) involve readily identifiable interests in land or other property, . . . other types of interests have been found to justify intervention" as well. Klamath Irrigation Dist. v. United States, 64 Fed. Cl. 328, 331 (2005).

ISM contends that, as the "manufacturer of the accused product with possible indemnification obligations," ISM Mot. 5, it has a legally protectable interest in the property at issue in this case. ACME argues that the SAIC and CymSTAR contracts do not contain indemnification obligations, and that the Sikorsky contract's indemnification obligation is limited to "commercial items." ACME Opp'n 3. Next, ACME avers that ISM's position in the Florida suit that ISM is "immune from liability" runs counter to ISM's position in the instant case that it may be subject to indemnification obligations. Id. Finally, ACME declares that ISM has no property interest in the "designs, drawings, and specifications" of the M240H weapon recoil simulator because, as ISM indicated in its motion for summary judgment in the Florida suit, all "right, title[,] and interest" it may have held in those designs, drawings, and specifications was transferred to the federal government. Id. at 3 (internal quotation marks omitted).

As an initial matter, the court agrees with ISM that ACME's reliance on ISM's disclaimer of liability before the Florida district court is inapposite. In the Florida suit, ISM relied on 28 U.S.C. § 1498(a) for the proposition that ISM was immune from liability for patent infringement to ACME because ACME's sole remedy was against the federal government in the Court of Federal Claims. The issue of ISM's potential indemnification liability to the federal government was not at issue. Indeed, ACME did not oppose the entry of summary judgment in the Florida suit. ISM's position here—that it is potentially subject to indemnification obligations should this court find that the M240 weapon recoil simulator infringes the '575 patent—is not inconsistent with its position in the Florida suit.

ISM relies primarily on Uusi, LLC v. United States, 110 Fed. Cl. 604 (2013), and Honeywell International Inc. v. United States, 71 Fed. Cl. 759 (2006), in support of its position that potential indemnification obligations are a sufficient interest to warrant intervention as a matter of right. In Uusi, another judge of this court explained that the putative intervenors had "identified their clear interest in the subject matter of this litigation, namely their potential indemnification responsibilities if the Government is found liable to Plaintiffs for patent infringement." 110 Fed. Cl. at 611 (emphasis added). The Uusi court observed that "[t]he interest of the third-party indemnitor is well established" in the Court of Federal Claims. Id. In Honeywell, another judge of this court found that the putative intervenor's "indemnification obligation and position as a potential defendant in a separate proceeding" where patent infringement would be at issue "more than satisfie[d]" the requirement of a legally protectable property interest for RCFC 24(a)(2) purposes. 71 Fed. Cl. at 765.

The court agrees with ISM that a potential indemnification obligation is a legally protectable interest sufficient to satisfy RCFC 24(a)(2). As ISM indicates, the "potential indemnification liability resulting from the Air Force's use of the M240H weapon recoil [simulator] flows from Sikorsky to FlightSafety to ISM." ISM Reply 6. However, that is not the end of the inquiry; the potential indemnification obligation must actually exist. In Uusi, the

federal government (1) "confirmed" that the relevant contracts required its prime contractor to "indemnify the Government in the event of liability for patent infringement" and (2) "represented" that lower-tier contracts could allow its prime contractor to, in turn, seek indemnification from its subcontractor for any such infringement. 110 Fed. Cl. at 611. The Uusi court declared that such indemnification obligations "clearly qualif[ied]" the subcontractor to "intervene as a matter of right." Id. at 611-12. Similarly, the Honeywell court emphasized that the subcontractor was "contractually obligated" to indemnify the prime contractor "for any infringement" stemming from the subcontractor's manufacture of the accused product. 71 Fed. Cl. at 764. The Honeywell court was able to evaluate the extent of the subcontractor's indemnification obligations because the subcontractor had "provided the contracts to the court and parties to confirm the fact and scope of the indemnification." Id. In other words, the Uusi and Honeywell courts' conclusions that the subcontractors' indemnification obligations constituted legally protectable interests for RCFC 24(a)(2) purposes were based on whether those indemnification obligations actually existed.

As in Honeywell, the contracts have been provided to the court. Defendant attached the relevant prime contracts to its motion to notify interested parties. All three prime contracts incorporate FAR 52.227-1 by reference, which provides:

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent—
>
> (1) Embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract; or
>
> (2) Used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a United States patent shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

FAR 52.227-1(a) (2010). Thus, unless a contract also contained an indemnity clause, the federal government would be wholly liable—to the exclusion of prime contractors, subcontractors, and lower-tier subcontractors—for any patent infringement that took place pursuant to the contract.

However, of the three prime contracts (SAIC, CymStar, and Sikorsky), it appears that only the Sikorsky contract contains an indemnification clause with respect to patent infringement. The patent infringement indemnity clause in the Sikorsky contract provides:

> (a) The Contractor shall indemnify the Government . . . against liability, including costs, for infringement of any United States patent . . . arising out of the manufacture or delivery of supplies [or] the performance of services . . . under the contract . . . .
>
> . . . .
>
> (c) This patent indemnification shall cover the following items: Commercial items delivered to the Government under this contract.

FAR 52.227-3; see also Def.'s Mot. Notice Interested Parties Ex. C at 5 (incorporating FAR 52.227-3, by reference, into the Sikorsky contract). Sikorsky's subcontract with FlightSafety contained FAR 52.227-1 and the identical patent infringement indemnity clause. In turn, FlightSafety's lower-tier subcontract with ISM contained FAR 52.227-1 and the following patent infringement indemnity clause:

> [ISM] warrants that the product will not infringe any U.S. or foreign patent and [ISM] shall hold harmless and indemnify [FlightSafety] and [Sikorsky] from and against any liabilities, claims, costs, losses[,] and expenses arising out of or in connection with any claim that [ISM's] product infringes any existing patent . . . . [ISM] shall, upon [FlightSafety's] request, expeditiously, at [ISM's] own cost and expense, defend [FlightSafety] and [Sikorsky] against any suit or action for product infringement as set forth herein.

ISM Reply Ex. 3 at 2.

Under the Sikorsky prime contract and its progeny, ISM can only be subject to an indemnification obligation with respect to patent infringement to the extent of Sikorsky's potential indemnification liability to the federal government. In other words, it appears that ISM is only subject to a potential indemnification obligation to the extent that "commercial items" were delivered, which raises the question of whether the M240H weapon recoil simulator is a "commercial item."[7]

---

[7] ISM asserts that "[t]he precise scope of Sikorsky's potential liability is not an issue now before this Court." ISM Reply 7. ISM is incorrect. ISM's potential liability, which it relies on as a legally protectable interest to justify intervention as a matter of right, is derivative of Sikorsky's potential liability. However, because the court finds that ISM meets the standards for

Since it was produced exclusively for the use and benefit of the federal government according to government specifications, the M240H weapon recoil simulator does not appear to meet the criteria for a commercial item.  See FAR 2.101 (providing the definition of a commercial item).[8]  Accordingly, ISM does not appear to be subject to a potential indemnification obligation for patent infringement with respect to the M240H weapon recoil simulator.

Further, ISM has failed to identify any other legally protectable interest in the subject matter of this action.  For example, ISM has no legally protectable interest in the M240H weapon recoil simulator itself because, as required, ISM transferred all right, title, and interest it may have held in any designs, drawings, and specifications with respect to the M240H weapon recoil simulator to the federal government.  See ACME Opp'n Ex. A at 18.

ISM's reliance on other purported legally protectable interests is unavailing.  ISM posits that, if patent infringement is found, it will be forced to either (1) discontinue selling the M240H weapon recoil simulator, (2) negotiate with ACME for a license to continue selling the simulator, or (3) continue selling the simulator without a license and risk additional litigation.  ISM Mot. 5; see also ISM Reply 5 ("But for a finding of infringement, ISM has every reason to anticipate future orders . . . .").  ISM also posits that it "continually develops and markets new products to meet its customers' needs" and that it could "develop new products that incorporate the same technology Acme claims infringes the '575 patent."  ISM Mot. 7.  ISM's arguments that these possible outcomes constitute legally protectable interests lack merit for three reasons.  First, as ACME remarks, "speculation [concerning] future contracts" does not give rise to a protectable interest.  ACME Opp'n 6.  Second, to the extent that ISM expects future sales, such an expectation is a "merely economic" interest.  See Wolfsen, 695 F.3d at 1315.  Finally, to the extent that such expectations could be considered business interests and not merely economic interests, there is no allegation that the M240H weapon recoil simulator is the "core" of ISM's business model—unlike in Honeywell, where the accused product "comprise[d] the core," 71 Fed. Cl. at 764, of the putative intervenor's business.

In short, ISM does not appear to have a legally protectable interest in the M240H weapon recoil simulator that is at issue in this case (or in any other matter that could be impacted by this case's eventual outcome).  Assuming, without deciding, that ISM does not have such a legally protectable interest, ISM cannot intervene in this case as a matter of right.  However, the court need not reach a conclusion with respect to whether there is such an interest and, ultimately, intervention as a matter of right because, as explained below, ISM meets the standards for permissive intervention.

---

permissive intervention, see infra Part III, it need not reach a conclusion with respect to the potential liability of Sikorsky to the federal government—neither of which has weighed in on the issue—to resolve the instant motion.

[8]  The Sikorsky prime contract and its progeny—Sikorsky's subcontract with FlightSafety and FlightSafety's lower-tier subcontract with ISM—each incorporate FAR 52.244-6, which refers to FAR 2.101 for the definition of a commercial item.

### III. PERMISSIVE INTERVENTION

Having determined that ISM is not entitled to intervene in this action as a matter of right, the court turns to ISM's alternative argument that it meets the standards for permissive intervention. RCFC 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[9] Further, the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." RCFC 24(b)(3). Courts have "broad discretion in deciding whether to allow permissive intervention." Chippewa Cree Tribe of Rocky Boy's Reservation v. United States, 85 Fed. Cl. 646, 660 (2009).

#### A. Timeliness

The first requirement for permissive intervention is that a motion to intervene must be "timely" filed. RCFC 24(b)(1). The timeliness requirement for permissive intervention "is often applied less strictly" in comparison to the timeliness requirement for intervention as a matter of right. R & G Mortg. Corp., 584 F.3d at 8.

The court has already determined that ISM has satisfied the timeliness requirement for intervention as a matter of right for the reasons stated above, which need not be repeated. See supra Section II.A. Therefore, ISM has also satisfied the less stringent timeliness requirement for permissive intervention.

#### B. Common Question of Law or Fact

The second requirement for permissive intervention is that the putative intervenor must "share[] with the main action a common question of law or fact." RCFC 24(b)(1)(B). ACME asserts that ISM's disclaimer of liability in the Florida suit demonstrates that ISM fails the commonality requirement. ACME's invocation of the Florida suit is unavailing for the reasons stated above. See supra Section II.B. ACME also asserts that "[b]ecause ISM is immune from Acme's infringement claims [either directly or indirectly], ISM does not have any defenses . . . ." ACME Sur-Resp. 5. For the sake of argument, the court assumes (without deciding) that ACME is correct that ISM's potential indemnification obligations do not exist. See supra Section II.B. However, ACME appears to conflate the standards for intervention as a matter of right and permissive intervention. ISM need not demonstrate that it has "a direct personal or pecuniary interest in the subject of the litigation" to succeed on its alternative request for permissive intervention; ISM need only show that it has "an interest sufficient to support a legal claim or defense which is founded upon that interest and which satisfies the Rule's commonality requirement." Diamond v. Charles, 476 U.S. 54, 77 (1986) (alteration and internal quotation marks omitted).

---

[9] ISM does not allege that it has a "conditional right to intervene [pursuant to] a federal statute," RCFC 24(b)(1)(A), nor is the court aware of any such right as applied to ISM.

In the instant case, it is undisputed that ISM is the manufacturer of the accused product and that both ISM and defendant argue noninfringement and invalidity. See, e.g., Def.'s Answer ¶¶ 39-40 (asserting noninfringement and invalidity); ISM Mot. Ex. 2 ¶¶ 39-40 (same). It is of no moment whether ISM faces an indemnification obligation for patent infringement with respect to its manufacture of the M240H weapon recoil simulator because ISM certainly has an interest in demonstrating noninfringement. Without such a finding, ISM may be required to cease selling the M240H weapon recoil simulator, purchase a license for the simulator from ACME, or defend further lawsuits. See, e.g., infra Section III.C. Therefore, ISM has satisfied the "common question of law or fact" requirement for permissive intervention.

### C. Delay or Prejudice

The third and final requirement for permissive intervention is that such intervention must not "unduly delay or prejudice the adjudication of the original parties' rights." RCFC 24(b)(3). ISM avers that "[t]here can be no claim of prejudice" because, whether or not ISM is permitted to intervene, ACME will have to prove that the M240H weapon recoil simulator infringes the '575 patent and that the '575 patent is valid. ISM Mot. 10.

The court has already observed that there are no allegations of prejudice or other circumstances that would weigh in favor of denying intervention. See supra Section II.A. Indeed, ACME addresses only the "common question of law or fact" requirement in opposing ISM's alternative motion for permissive intervention. The court agrees with ISM that ACME will not be prejudiced should ISM be allowed to intervene. If ISM is included as a party to this action, ACME will not have to prove any additional claims or overcome any additional defenses. See, e.g., Sec. Ins. Co. v. Schipporeit, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995) ("[Plaintiff] can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate."). On the other hand, if ISM is not allowed to intervene, there is the possibility that either ACME or ISM could seek a declaratory judgment in federal district court regarding patent infringement (or lack thereof) with respect to the M240H weapon recoil simulator. Such an action would involve the same facts as the instant case and would thus be unnecessarily duplicative. This possibility weighs in favor of allowing intervention. See id. ("Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding.").

Further, because defendant does not oppose ISM's intervention, the court assumes (without deciding) that defendant will not be prejudiced should ISM be allowed to intervene. Finally, the court concludes that, due to the procedural posture of this case, allowing ISM to intervene will not delay this case's adjudication. Therefore, ISM has satisfied the third and final requirement for permissive intervention.

## IV. SCOPE OF ISM'S PARTICIPATION

Having determined that ISM has satisfied all of the requirements for permissive intervention under RCFC 24(b), the court must consider what conditions, if any, to impose upon ISM's participation. See Forest Cty. Potawatomi Cmty. v. United States, 317 F.R.D. 6, 15 (D.D.C. 2016) ("[C]ourts may impose appropriate conditions or restrictions upon the intervenor's participation in the action."). The purpose of imposing conditions upon an intervenor's participation is to "ensure the fair, efficacious, and prompt resolution of the litigation." Id.

ACME asks the court to limit ISM's participation to "coordinating with [defendant] concerning the two areas identified by ISM as to which it purports to have special insight: (1) the design and operation of the accused systems, and (2) prior art." ACME Opp'n 9. ACME asserts that "ISM should not be able to complicate this case by filing its own discovery requests or motions, separate and apart from [defendant]." Id.

In order to "strike the appropriate balance between ensuring the expedient resolution of this action while preserving a space for [ISM] to articulate [its] respective positions and interests," Forest Cty., 317 F.R.D. at 16, the court will require ISM to coordinate its discovery requests and responses with defendant to determine whether ISM's and defendant's positions with respect to discovery may be set forth in a consolidated manner. With respect to other matters, ISM and defendant are encouraged to utilize consolidated filings to the extent practicable, and need not seek leave of court before doing so. Otherwise, ISM shall be entitled to participate fully in this case as a party for all purposes. To the extent that further restrictions are needed to expeditiously advance this proceeding, they are already contained within the RCFC. See Klamath, 64 Fed. Cl. at 336 ("[T]he court has adequate facility to limit the issues which may be presented in a proceeding and, in particular, to prevent extraneous issues that might prove disruptive from being injected . . . ."). As a further measure in the interest of judicial economy, ACME will be permitted to utilize consolidated requests and responses (both with respect to discovery and other matters) where appropriate.

## V. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, without merit, or unnecessary for resolving the issues currently before the court.

Although ISM has timely moved to intervene in this patent infringement action, ISM does not appear to have a legally protectable interest in the subject matter of this action because ISM's purported indemnification obligations appear to be nonexistent. However, as the manufacturer of the accused product, ISM shares the defenses of noninfringement and invalidity with defendant. Further, allowing ISM to intervene will neither delay the adjudication of this case nor prejudice the rights of any existing parties.

Accordingly, the court **DENIES** ISM's motion to intervene as a matter of right pursuant to RCFC 24(a) and **GRANTS** ISM's alternative motion for permissive intervention pursuant to RCFC 24(b). The clerk is directed to add ISM as an intervenor. ISM is entitled to participate fully as a party to this case subject to the conditions outlined above. Further, all future filings in this case shall bear the following caption:

```
*************************************
ACME WORLDWIDE ENTERPRISES,    *
INC.,                          *
                               *
         Plaintiff,            *
                               *
v.                             *
                               *
THE UNITED STATES,             *
                               *     No. 17-843C
         Defendant,            *     Judge Margaret M. Sweeney
                               *
and                            *
                               *
INDUSTRIAL SMOKE & MIRRORS,    *
INC.,                          *
                               *
         Defendant-Intervenor. *
*************************************
```

The parties shall file a JPSR **no later than Wednesday, May 30, 2018**.

**IT IS SO ORDERED.**

                                                          s/ Margaret M. Sweeney
                                                          MARGARET M. SWEENEY
                                                          Judge