# In the United States Court of Federal Claims

No. 17-843 CV

(Filed: December 18, 2025)

```
* * * * * * * * * * * * * * * * * * * * *
                                        *
ACME WORLDWIDE ENTERPRISES, INC.,       *
                                        *
                Plaintiff,              *
                                        *
        v.                              *
                                        *
THE UNITED STATES,                      *
                                        *
                Defendant,              *
                                        *
and                                     *
                                        *
INDUSTRIAL SMOKE & MIRRORS, INC.,       *
                                        *
                Defendant-Intervenor.   *
                                        *
* * * * * * * * * * * * * * * * * * * * *
```

    *John P. Moran*, Holland & Knight LLP, of Washington, D.C., for Plaintiff.

    *Conrad DeWitte*, Assistant Director, with whom were *Scott Bolden*, Director, and *Yaakov Roth*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, Department of Justice, and with whom was *Margaret S. Hibnick*, of Counsel, Trial Attorney, Department of Justice, all of Washington, D.C.

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

    Before the Court is the government's motion for leave to amend its 2018 noninfringement contentions. ECF No. 183. This is not the government's first such motion in the seven years between serving its noninfringement contentions and bringing the current motion. In 2022, the government filed its first motion for leave to amend its noninfringement contentions, seeking the Court's permission to "clarif[y] its contention that the lack of a weapon sluggishness malfunction in the accused systems renders those systems noninfringing." ECF No. 100 at 4. During oral argument on the government's 2022 motion, the government decided to withdraw its motion for leave, ECF No. 123 at 62:7–9, and, thereafter, the parties continued to engage in and completed fact and expert discovery, *see* ECF No. 121.

Now, the government once again moves the Court to amend its noninfringement contentions to include several conclusions reached by its expert witness, Dr. Neal M. Finkelstein, Ph.D. In its motion, the government indicates only that it seeks to include "Dr. Finkelstein['s] disclosed noninfringement arguments regarding Claim 1 and Claim 9." ECF No. 183 at 15. However, it neglected to indicate which of Dr. Finkelstein's arguments it seeks to add and how precisely it intends to revise its previously served contentions to reflect Dr. Finkelstein's opinions. Only at oral argument did the government explain what language it plans to pull from Dr. Finkelstein's report to supplement its contentions. When seeking leave to amend its noninfringement contentions, the government should have included its proposed amendment along with its motion. However, as is explained below, even had the government included its proposed amendments, the government failed to demonstrate diligence or that Plaintiff would not be prejudiced by the proposed amendment. Accordingly, the government's motion is denied.

## BACKGROUND

The facts of this case are largely set forth in the Court's previous opinions in this case. *See, e.g., ACME Worldwide Enters., Inc. v. United States*, No. 17-843, 2022 WL 6853387 (Fed. Cl. Oct. 11, 2022); *ACME Worldwide Enters., Inc. v. United States*, 146 Fed. Cl. 341 (2019), *clarified on denial of reconsideration*, 147 Fed. Cl. 654 (2020). In lieu of repeating those facts again, only the relevant facts are detailed below.

In 2017, Plaintiff filed suit alleging that the government infringed upon its patent, U.S. Patent Number 8,690,575, which "relates to a weapon simulator that provides realistic full force recoil at the full rate of fire of an actual weapon and allows an instructor to alter the recoil rates of a weapon, while in use, to simulate different malfunctions." ECF No. 1; *ACME*, 146 Fed. Cl. at 344–45. Plaintiff alleged that the government incorporated its patent into training simulators produced by Defendant-Intervenor Industrial Smoke and Mirrors. *ACME*, 146 Fed. Cl. at 344. In response, the government answered, asserting that the patent was invalid and, in the alternative, that it had not infringed on Plaintiff's patent. ECF No. 10 at 6–7. The parties subsequently submitted a joint preliminary status report, proposing deadlines for, *inter alia*, Plaintiff's infringement contentions and the government's *noninfringement* and invalidity contentions. ECF No. 32 at 6. Judge Sweeney, who was assigned to the case at the time, issued a scheduling order adopting the parties' proposed schedule. ECF No. 33. In December 2018, the government served its noninfringement and invalidity contentions on Plaintiff. ECF No. 38 (order granting an extension for the governments deadline to December 14, 2018); ECF No. 183 at 2; ECF No. 184-1 (citing to the government's 2018 noninfringement contentions).

Also in December 2018, the case was transferred to Judge Damich. ECF No. 39. Following briefing and oral argument on claim construction, Judge Damich issued an opinion construing most of the claims now at issue in December 2019. *ACME*, 146 Fed. Cl. at 355–56. He ordered supplemental briefing on the term "gun active recoil unit" due to a concern that the term might be used differently in two of the claims. *Id.* at 356. Following supplemental briefing, Judge Damich adopted the plain meaning of "gun active recoil unit" in both contexts. *ACME*, 147 Fed. Cl. at 661. While the parties were engaged in fact discovery, the case was transferred to the undersigned. ECF No. 73. In 2022, prior to the end of fact discovery, the government filed its first motion for leave to amend its noninfringement contentions, seeking the

Court's permission to "clarif[y] its contention that the lack of a weapon sluggishness malfunction in the accused systems renders those systems noninfringing." ECF No. 100 at 4. The government argued that the amendment to its contentions for which it sought leave was "not a new noninfringement contention; rather, the Government [was] clarifying its previously disclosed contention, a clarification which the Government made promptly after realizing that ACME believed it was new and not part of the currently operative contentions." *Id.* at 5. However, during oral argument on the motion for leave, the government withdrew its motion. ECF No. 123 at 62:7–9.

The parties continued with fact discovery and submitted expert reports in 2023. ECF No. 132. Disputes percolated over whether the government needed to amend its noninfringement contentions, but expert depositions and discovery nevertheless progressed. In February 2025, the government filed its second motion for leave to amend its noninfringement contentions. ECF No. 183. Plaintiff responded, opposing the motion, ECF No. 185, and, after briefing, the Court held oral argument, ECF No. 191.

## DISCUSSION

**A.    Legal Standard**

Under Rule 16(b)(4) of the Rules of the U.S. Court of Federal Claims ("RCFC"), a party may move to modify a court-imposed schedule "only for good cause and with the judge's consent." The good cause requirement is echoed in Rule 24 of the Patent Rules of the RCFC ("PRCFC"), which concerns amending the Preliminary Disclosure of Invalidity Contentions. *See also Cellcast Techs., LLC v. United States*, No. 15-1307, 2019 WL 5959571, at *5 (Fed. Cl. Oct. 30, 2019) (analyzing the good cause standard "in the context of amending contentions in a patent infringement case"). The PRCFC does not specifically require or even contemplate the preliminary disclosure of, or any amendment to, noninfringement contentions; however, courts generally require a showing of good cause in motions to modify court-imposed schedules for amending infringement and noninfringement contentions. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, 1368 (Fed. Cir. 2006) (affirming a district court's denial of leave to amend infringement contentions for not meeting the good cause standard); *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 952–54 (Fed. Cir. 2013) (affirming a trial court's denial of leave to amend infringement contentions for failing to demonstrate that good cause existed); *Return Mail, Inc. v. United States*, 152 Fed. Cl. 455, 459–60 (2021) (granting the government's motion to amend invalidity contentions after establishing good cause under RCFC 16(b)(4)); *MorphoTrust USA, LLC v. United States*, 132 Fed. Cl. 419, 419, 421 (2017) (denying third-party defendants' motion for leave to amend invalidity contentions for failure to show good cause per RCFC 16(b)(4)).

Meeting the good cause standard requires two separate showings: (1) the movant must establish diligence, and, if successful, (2) the movant must also demonstrate that the non-movant would not be prejudiced. *See Return Mail*, 152 Fed. Cl. at 459; *O2 Micro*, 467 F.3d at 1363, 1368. Diligence has been interpreted to mean that a party did not unreasonably delay in moving to amend. *See O2 Micro*, 467 F.3d at 1367–68 (finding a "delay in moving to amend [the movant's] infringement contentions and [the movant's] lack of adequate explanation for this

3

delay" to lack diligence). The moving party bears the burden of establishing diligence, and the Court may weigh, *inter alia*, "additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order." *Return Mail*, 152 Fed Cl. at 459 (quoting *Cellcast*, 2019 WL 5959571, at *5).

If the moving party fails to establish diligence, the Court may conclude its analysis and deny the motion. *See O2 Micro*, 467 F.3d at 1368; *Sci. Applications Int'l Corp. v. United States*, 153 Fed. Cl. 485, 493 (2021). However, if the movant successfully shows diligence, then the Court must analyze what, if any, prejudice granting the motion would impose on the non-moving party. *See MorphoTrust*, 132 Fed. Cl. at 420–21. Courts consider factors such as "whether the non-moving party has been 'genuinely surprised or harmed,' whether discovery would be reopened, 'the effect of amendments on the construction of claim terms,' and whether experts have 'staked out comprehensive positions with respect to claim construction.'" *Return Mail*, 152 Fed. Cl. at 459 (first quoting *Hitkansut LLC v. United States*, 127 Fed. Cl. 101, 109 (2016); then citing *Kruse*, 544 F. App'x at 953–54; then quoting *Cellcast*, 2019 WL 5959571, at *5; then quoting *MorphoTrust*, 132 Fed. Cl. at 421). Upon satisfaction of both the diligence and prejudice inquiries, a party may be permitted to amend a court-imposed scheduling order. *See, e.g., Cellcast*, 2019 WL 5959571, at *12.

**B.      Analysis**

In 2022, when the government moved to amend its noninfringement contentions, it sought to add one additional paragraph of "clarification," which it attached to its motion. ECF No. 100-8 at 12–13. The paragraph expounded on the issue of simulating weapon sluggishness and the relationship between the host computer and the device in "dynamically altering a frequency of recoils per second when the weapon simulator is in use." *Id*. The government underscored that it sought to "clarify[] its previously disclosed contention," which it stated was filed diligently and did not impose any prejudice. ECF No. 100 at 5–6. As mentioned above, the government withdrew this motion during oral argument. *See* ECF No. 123 at 62:7–9.

The government again moves to amend its noninfringement contentions, now seeking to incorporate testimony by Dr. Finkelstein, its expert witness. *See* ECF No. 183. Attached to this motion, the government provided eleven exhibits, which included two expert reports by Dr. Finkelstein (one that is 47 pages long, and another that is 46), copies of the 2018 invalidity and noninfringement contentions, transcript excerpts from hearings regarding prior amendments and expert testimony, and responses to interrogatories. *See, e.g.*, ECF Nos. 184-3, 184-8, 184-1, 184-10 (in order listed). Conspicuously absent from the government's opening brief, its reply brief, and its 255 pages of attachments, however, is the actual language of the proposed amendment to the contentions. Undoubtedly, the government was capable of producing such a document, as it did in its 2022 briefing, which included both a clean and red-lined version of its proposed amendment that indicated the exact language it sought leave to amend. *See* ECF Nos. 100-7, 100-8. This time around, the government waited until oral argument to finally unveil the language it seeks to amend to its contentions, drawing on one paragraph from Dr. Finkelstein's 2024 report and adjusting it over the course of argument. *Compare* ECF No. 193 at 52–53, *with*

4

*id.* at 91–92 (quoting ECF No. 184-8 ¶ 11) (adding language about a dependent claim later in the proceeding).

To the extent that the government has left the Court to divine what exactly the proposed amendment to its contentions is, the government has effectively waived its motion *ab initio*. *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58–59 (Fed. Cir. 2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver." (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002); *Cap Exp., LLC. v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018))); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived." (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320–21 n.3 (Fed. Cir. 2005))).  In short, the government failed to clearly inform the Court and Plaintiff of the exact nature of its proposed amendment until oral argument; as such, this proposed amendment is untimely.  That said, even if the government had timely provided the language for the proposed amendment, the Court would have to deny the government's motion for the reasons explained below.

## 1. To the Extent that the Government Proposed New Language, It Must Amend its Noninfringement Contentions.

Insofar as the government's proposed amendment to its noninfringement contentions is properly before the Court, the government is incorrect in asserting that the proposed language is merely a clarification that is "wholly consistent with Defendant's noninfringement contention served December 14, 2018." ECF No. 183 at 11.  The government states that it moves "[o]ut of an abundance of caution," ECF No. 188 at 1, and need not actually amend its noninfringement contentions because the changes amount to Dr. Finkelstein "merely opin[ing] on the 'plain and ordinary' meaning of the term 'dynamically altering a frequency of recoils per second when the weapon simulator is in use' given by the Court," ECF No. 183 at 11.  Contrary to the government's argument, the proposed language is not encompassed in the language of the 2018 noninfringement contentions; nor is the language similar to the 2022 proposed amendment, which the Court reasoned at oral argument did not justify amendment.  *See* ECF 193 at 42:22–43:1.  In fact, as discussed below, the government's "clarification" is not only inconsistent with its 2018 contentions, but with Judge Damich's 2019 discussion of ACME's patent and the language used in the patent abstract for ACME's gun active recoil unit.  *See ACME*, 146 Fed. Cl. at 345.

The original noninfringement contention reads, in relevant part: "Because the Accused Device does not alter a frequency of recoils per second, there can be no infringement."  ECF No. 184-1 at 12.  As far as the Court can discern, the government now seeks to amend its contentions so that it can introduce Dr. Finkelstein's testimony that

> the plain and ordinary meaning of the claim term "dynamically altering a frequency of recoils per second when the weapon simulator is in use" is not met because the operator is adjusting the frequency of recoils (either by typing in a new frequency, or by using a slide bar), and this change to the frequency of recoils per second is not dynamic.

ECF No. 183 at 6 (citing ECF No. 184-3 ¶¶ 9–11; ECF No. 184-8 ¶¶ 30–33).[1] As an initial matter, it is unclear exactly how this statement fits with the previous contentions—whether this supersedes or adds to the existing contentions—as the issue was never briefed. More importantly, the additional discussion of the operator's role in changing the frequency of recoils substantively differs from the 2018 language and cannot be attributed to, as the government argues, Dr. Finkelstein simply "opin[ing] on the 'plain and ordinary' meaning of the term 'dynamically altering a frequency of recoils per second when the weapon simulator is in use' given by the Court." ECF No. 183 at 11. Rather, the government's proposed amendment introduces a new argument for noninfringement.

By contrast, in 2022, the Court found the government's motion for leave to amend unnecessary because, based on the briefing and without the benefit of Dr. Finkelstein's report, the Court understood the proposed language to mean that to alter the frequency of recoils on the accused device, an operator had to physically touch the simulator to make the adjustment. *See* ECF No. 100-7 at 12 ("The weapon simulators which incorporate the [Industrial Smoke and Mirrors] system do not practice the asserted claims because any change in frequency of recoils does not happen automatically (if at all) but, rather, only by manual intervention of the instructor/operator in adjusting the gun configuration setting for rate of fire." (footnote omitted)). Dr. Finkelstein's discussion of computer-controlled adjustment through intervention of an operator does not simply define "dynamically altering a frequency of recoils per second" as the government asserts, ECF No. 183 at 11, 14–15, but rather changes the entire meaning of the government's original contention that "the Accused Device does not alter a frequency of recoils per second," ECF No. 184-1 at 12. Unlike in 2022, the government's new proposed language— presented for the first time at oral argument—would require amendment of the noninfringement contentions. That is to say, the 2022 proposed amendment was at least arguably consistent with the original noninfringement contentions; conversely, the government's 2025 proposed amendment is inconsistent with those contentions.

The original noninfringement contentions state as plain as day that "that the accused system does not replicate weapon sluggishness" and that "the Accused Device does not alter a frequency of recoils per second." ECF No. 184-1 at 12. Now, it appears that the government essentially wants to argue that although the accused device *does* replicate weapon sluggishness and *does* alter a frequency of recoils per second, it nonetheless *does not* infringe "because 'it is the instructor who interacts with the simulator to cause a change in the frequency of recoils per second' rather than 'the host computer and gunner [] interacting with each other directly.'" ECF No. 183 at 11 (quoting ECF No. 184-3 ¶¶ 22–23; ECF No. 184-8 ¶¶ 53, 56) (alteration in original). This is a completely different contention from the original noninfringement contentions and requires amendment.

Moreover, the fact that the contention is completely different should have been obvious to the government. First, in Judge Damich's 2019 opinion, he makes clear that he understood the

---

[1] The Court, however, surmises these citations may be in error, as it sees these contentions made elsewhere in the exhibits. *See, e.g.*, ECF No. 184-3 ¶¶ 5-6, 49, 54; ECF No. 184-8 ¶¶ 11, 81.

term "dynamically alter" to include the instructor changing the frequency of recoil rates using a host computer: "The invention also *allows an instructor to alter the recoil rates* of a weapon, while in use, to simulate different malfunctions such as jams, duds, misfires, and round cook-off." *ACME*, 146 Fed. Cl. at 345 (emphasis added). There are numerous other examples from Judge Damich's opinion that, when read in context, make this point clear. Second, the patent abstract also explains that an instructor could alter the recoil rates using a host computer: "In this embodiment, *an instructor* can optionally initiate gun active recoil unit and/or gun activity through a host computer. . . . This embodiment further supports instructor-inserted malfunctions, jams, duds[,] and out of ammunition." ECF No. 1-2 at 13–14 (emphasis added). The abstract further notes that: "[t]he host computer is preferably controlled *by an instructor*"; "*[t]he instructor* can also initiate gun active recoil unit . . . and/or gun . . . activities through the host computer without any input from a user"; and "[v]arying rates of fire below the maximums required can be input into the host computer *by the instructor*." *Id.* at 15 (emphasis added).

In short, when the government submitted its original noninfringement contentions, it should not have been confused that the term "dynamically alter" included an instructor altering the rate of recoil per minute and that he or she could do so using a host computer. Accordingly, the government can hardly argue now that it is a mere "clarification" to assert that the "term 'dynamically altering a frequency of recoils per second when the weapon simulator is in use' is not met because the operator is adjusting the frequency of recoils[.]" ECF No. 183 at 6.

### 2.     The Government Has Not Shown Good Cause.

Beyond arguing that amending its noninfringement contentions is unnecessary, the government spends much of its briefing trying to argue around application of the good cause standard because (1) "noninfringement contentions are not contemplated by the [PRCFC]" and (2) prohibiting the government from amending its noninfringement contentions would convert them into an affirmative defense. *Id.* at 7–10. The government's arguments are misplaced. First, it is true that there is no provision for serving or amending noninfringement contentions in the PRCFC. This point, however, is inapposite to the question of whether the good cause standard applies. Regardless of whether the PRCFC contains such a provision, Judge Sweeney's order that set the deadline for submissions of noninfringement contentions (ECF No. 33) was a scheduling order. *See* RCFC 16(b)(1)(A) ("The court must issue a scheduling order . . . after receiving the parties' Joint Preliminary Status Report . . . ."). And a schedule set by a scheduling order "may be modified only for *good cause* and with the judge's consent." RCFC 16(b)(4) (emphasis added). As such, all of the government's protestations regarding the requirements of the PRCFC and affirmative defenses do not change the fact that good cause must be shown to modify a scheduling order.

Moreover, the Court did not impose this requirement on the government *sua sponte*. In 2018, the parties submitted a joint preliminary status report, which the government signed, that requested that the Court schedule the deadline for, *inter alia*, "Defendant's Non-Infringement and Invalidity [C]ontentions . . . [on] Friday, November 16, 2018." ECF No. 32 at 6. Soon thereafter, Judge Sweeney issued a scheduling order "adopt[ing] the schedule proposed by the parties[.]" ECF No. 33 at 1. The Court thus adopted a schedule that the government not only agreed to, but helped create. In agreeing to that schedule, the government established an

7

expectation on which Plaintiff could rely for "shaping the conduct of discovery and trial preparation." *ACME*, 2022 WL 6853387, at *2 (quoting *O2 Micro*, 467 F.3d at 1366). The government must play by the very rules it helped write, and the fact that the PRCFC does not include a provision for noninfringement contentions does not unwrite those rules. *Cf. Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").

Accordingly, to be entitled to leave to amend its noninfringement contentions, the government must meet the good cause standard established in RCFC 16(b)(4). To demonstrate good cause, the government must show that it was diligent and that the change will not prejudice the non-moving party. *MorphoTrust*, 132 Fed. Cl. at 421 ("Rule 16 of this court's rules allows the modification of a court-imposed schedule 'only for good cause and with the judge's consent.' Relevant to the question of whether good cause exists in this context are both the questions of diligence and prejudice." (quoting RCFC 16(b)(4))); *see also David Boland, Inc. v. United States*, No. 17-166C, 2023 WL 4058019, at *1 (Fed. Cl. June 16, 2023) ("In applying [the good cause] standard, this Court has considered the movant's diligence and the possibility of prejudice to the other party."). The government fails to meet either burden.

### a.     The government fails to show that it acted diligently.

The government has failed to demonstrate that it acted diligently in moving to amend its noninfringement contentions five years after first retaining Dr. Finkelstein, *see* ECF No. 183 at 12–13, and seven years after it served its contentions on Plaintiff, *see id.* at 2, 13. Despite such a large gap in time, courts have found that a party may demonstrate diligence if its delay is due to "additional or unexpected results of discovery, along with the possibility of unanticipated construction of claim terms according to the court's claim construction order." *Cellcast*, 2019 WL 5959571, at *5 (citing *MorphoTrust*, 132 Fed. Cl. at 421). Here, however, the Court is left asking why the government allowed five or seven years to lapse before bringing this motion and what "additional" or "unanticipated" revelations occurred in the interim that were not, or could not be, known in 2022, when it filed its first motion to amend, or in 2018, when it filed its noninfringement contentions. *See ACME*, 2022 WL 6853387, at *4–6 (finding that the government failed to demonstrate that it acted with due diligence when seeking to incorporate additional references to prior art into its invalidity contentions in 2022). The government's motion does not answer these questions.

Ignoring the fact that its contentions were filed in 2018, the government measures its delay from the end of 2024, when expert discovery was complete and Dr. Finkelstein submitted his second expert report. ECF No. 183 at 6; ECF No. 188 at 6–7. The government frames Dr. Finkelstein's opinions that were contained in his second expert report as "additional or unexpected results of discovery." ECF No. 183 at 12. In so doing, the government attempts to depict as unanticipated a development that was entirely within its control and is based on facts and expertise to which it long had access. The Court asked the government about this at oral argument, to which it responded, "the reason why we waited until after the close of expert discovery to amend our infringement contentions was . . . things have taken so long and things

have happened that have been unexpected and who knows if there were going to be responsive reports." ECF No. 193 at 52:4-9. However, this "close of expert discovery" deadline for the government to move to amend its noninfringement contentions is illusory, as the government claims that it attempted the same amendment in 2022. *Id.* at 53:25–54:1–2. Moreover, simply emphasizing the temporal proximity between this motion and the end of discovery does not advance the government's case regarding diligence. The government could have consulted with Dr. Finkelstein regarding its noninfringement contentions well before the close of discovery. Indeed, it could have consulted with Dr. Finkelstein or some other expert before expert discovery even opened. But more importantly, the government does not explain why it only realized through Dr. Finkelstein's expert testimony that "the plain and ordinary meaning of the claim term 'dynamically altering a frequency of recoils per second when the weapon simulator is in use' is not met because the operator is adjusting the frequency of recoils . . . ." ECF No. 183 at 6 (citations omitted). Furthermore, if Dr. Finklestein's definition is, in fact, the claim term's "plain and ordinary meaning," why was an expert needed to discover it in the first place? The government does not even attempt to answer this question. In short, the government does not explain why it was unable to discover this expert's opinion before late 2024 or why an expert opinion was even needed for this "discovery."

What is more, as Plaintiff highlights, Dr. Finkelstein "acknowledged that he proposed this theory in late 2020 or early 2021." ECF No. 185 at 7–8 (footnote omitted). The fact that he did not complete his expert report until late 2024, near the discovery deadline, does not relieve the government of its responsibility to move without delay. The Court pressed the government on this issue at oral argument, seeking any explanation for why Dr. Finkelstein could not have discussed this noninfringement theory with the government before 2024. *See* ECF No. 193 at 54:10–19. In response, the government offered only that "it's just how discovery progresses . . . ." *Id.* at 54:20–21. But this "explanation" fails to show what unexpected or unanticipated revelations occurred between 2020, when Dr. Finkelstein was retained, *id.* at 54:13–14, and 2024, when he submitted his final expert report, *id.* at 55:25. Moreover, in his report, Dr. Finkelstein cites the references he purportedly relied on in preparing his expert report, none of which were written after September 2023. *See* ECF No. 184-3 at 5, 49–50. And the government puts forth no evidence that Dr. Finkelstein relied on any particular reference created after 2018 to reach the conclusion that forms the basis of the government's request to amend its contentions. Indeed, to reach the conclusion at issue, Dr. Finkelstein's report reflects that he drew predominantly on references to the patent itself and information about the underlying technology that was created before 2018. *See generally* ECF No. 184-8. The government thus fails to identify a single event that occurred after 2018 that would have altered or even informed Dr. Finkelstein's opinion.

The government's diligence argument presents an inherent contradiction. On the one hand, the government asserts that the proposed language does not require amendment because it is simply an example of Dr. Finkelstein opining on the "plain and ordinary meaning" of a term, which would presumably be the same when Dr. Finkelstein was first retained in 2020 as it is now. ECF No. 183 at 6; ECF No. 185 at 7–8. On the other hand, the government argues that the "clarification" required expert discovery. ECF No. 183 at 12–13. It cannot be true that the "clarification" is simply an explanation of the term's "plain and ordinary meaning" yet that it also required years of expert discovery to unearth.

9

The facts demonstrate that the government delayed bringing this motion for years. Courts have held that even a three-month delay is not reflective of diligence without a showing that the party required that time. *See O2 Micro*, 467 F.3d at 1367 ("[T]he [court's] finding of a lack of diligence by O2 Micro was not unreasonable or arbitrary . . . . [as] O2 Micro waited almost three months . . . to serve its proposed amended contentions . . . ."). The government has failed to meet its burden to provide an adequate explanation for its delay in bringing this motion, as it attributes the delay to events within its control. *See generally* ECF No. 183. It thus cannot claim diligence while failing to account for the years-long delay, and, as such, it does not establish good cause for its motion to amend.

### b. The government fails to demonstrate that Plaintiff would not be prejudiced by the amendment.

Just as the Court observed in 2022, it need not address whether Plaintiff would be prejudiced, as the government has failed to show diligence. *See ACME*, 2022 WL 6853387, at *6 ("[T]he Court need not actually consider prejudice to Plaintiff because it has already concluded that the government did not act with diligence." (citing *O2 Micro*, 467 F.3d at 1368; *Sci. Applications*, 153 Fed. Cl. at 493)). Yet even a cursory analysis of the factors that courts consider to determine prejudice shows that the government has not met its burden on this point either.

The government argues that because Plaintiff has "not yet participated in expert discovery," it has not been harmed. ECF No. 183 at 13 (citations omitted). It contends that "Plaintiff's failure to provide an expert report on infringement precipitated Dr. Finkelstein preparing his first expert report," and Plaintiff had months to review Dr. Finkelstein's report. *Id.* at 14. It further argues that, during the review period, Plaintiff had the opportunity to submit an expert report on infringement but never did. *Id.* Plaintiff retorts that it would be prejudiced by an amendment because fact discovery has now ended, and expert reports have been submitted. ECF No. 185 at 10–11. It summarizes the government's request as seeking "to set this case back to the beginning." *Id.* at 11.

Were the Court to grant the government leave to amend its noninfringement contentions, Plaintiff would be prejudiced. First, the government was a party to proposing a schedule that imposed a deadline for noninfringement contentions, thereby creating an expectation upon which Plaintiff could rely in shaping its discovery. *See* ECF No. 32 at 6. In the government's own words, "[r]ecognizing that it may, at times, benefit the Court and all parties to have additional information regarding the parties' positions, the Government proposed and the Court ordered service of non-infringement contentions, among other items." ECF No. 100 at 2. By creating a "benefit" for the Court and all parties, the government created an expectation, and, in doing so, now finds itself "hoist with [its] own petard." WILLIAM SHAKESPEARE, HAMLET act 3, sc. 4, l. 230. If the Court permitted the government to shift those expectations at the last moment and after the close of discovery, "the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *O2 Micro*, 467 F.3d at 1366. By creating an expectation and then undermining it, the government would have the

opportunity to "genuinely surprise[] or harm[]" Plaintiff with its amendment. *See Hitkansut*, 127 Fed. Cl. at 109.

Furthermore, fact and expert discovery are now closed. Plaintiff argues that "fact discovery would need to be reopened to investigate and obtain videos of any instructor involvement, as the Court would define that term, in the operation of the accused [Industrial Smoke and Mirrors] weapon simulators." ECF No. 185 at 10–11. In *Kruse Technology Partnership*, the Federal Circuit affirmed the trial court's finding that amendment of infringement contentions imposed prejudice on the non-moving party because, although Plaintiff "served the proposed amendments before the close of discovery, . . . fact discovery was nearing its end and was closed by the time the district court decided [Plaintiff's] motion to amend." 544 F. App'x at 953. The Circuit affirmed the district court, in part, because the proposed change was "to the theory of infringement that would likely have meant re-opening of *Markman* proceedings and extending discovery." *Id.*; *see also Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010) ("[A] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999))). As discussed above regarding the need for amendment, the government's proposed amendment would shift the focus of its argument to how a change in the frequency of recoils per second is accomplished as opposed to focusing on whether the accused device can alter the frequency of recoils per second at all. *Compare* ECF No. 184-1 at 12 ("Because the Accused Device does not alter a frequency of recoils per second, there can be no infringement."), *with* ECF No. 183 at 6 ("[T]he claim term . . . is not met because the operator is adjusting the frequency of recoils . . . ."). Therefore, the Court agrees with Plaintiff that the amendment presents a risk of having to reopen discovery and potentially claim construction, which would delay proceedings at a late stage in the litigation's history. As such, the government has failed to show that Plaintiff would not be prejudiced by its motion. For this reason, as well as those discussed above, the government's motion is denied.

## CONCLUSION

The Court finds that the government essentially waived its own motion when it filed the motion without providing the Court with the actual language of its proposed amendment(s). However, even if the government had timely provided the language that it belatedly supplied at oral argument, that language differs enough from both the original 2018 noninfringement contentions and the 2022 proposed amendment to require a showing of good cause, which the government failed to make. Accordingly, for the foregoing reasons, the Court **DENIES** the government's Motion to Amend its Noninfringement Contentions. The parties shall file a joint status report proposing a schedule for further proceedings **on or before January 16, 2026**.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge